IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


MOHAMED ADAM TAIRAB,

      Petitioner,

v.                                                              Civ. No. 2:26-cv-00450-JB-KRS

KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; PAMELA BONDI,
U.S. Attorney General; MARY DE ANDA-YBARRA,
Field Officer Director of Enforcement and Removal
Operations, El Paso Field Office, Immigration and
Customs Enforcement; TODDY LYONS, Director,
U.S. Immigration and Customs Enforcement; and
WARDEN, Otero County Processing Center,

      Respondents.[1]

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before the Court on *pro se*[2] Petitioner Mohamed Adam Tairab

("Petitioner") Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), (Doc. 1),

filed February 17, 2026.[3] On March 11, 2026, Kristi Noem, Pamela Bondi, Mary De Anda-Ybarra,

---

[1] The opening pleading lists Kristi Noem and Pamela Bondi as Respondents. The Court directs the Clerk to replace Respondent Kristi Noem with Markwayne Mullin, the current Secretary, U.S. Department of Homeland Security, and Respondent Pamel Bondi with Todd Blanche, the current Attorney General of the United States. *See Lowmaster v. Dir., Bureau of Prisons*, 2024 WL 5135970, at *1 (D. Kan. Dec. 17, 2024) ("the Court notes that it routinely substitutes the" proper parties as "respondent in habeas cases"); *Danderson v. Page*, 2024 WL 3913051, at *2 (E.D. Okla. Aug. 20, 2024) (substituting the proper party respondent in a habeas case).

[2] Petitioner is a *pro se* litigant and, as such, his "pleadings are to be construed liberally and held to a less stringent stand than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It is not the proper function of this Court, however, to assume the role of *pro se* Petitioner's advocate. *Id.*

[3] On February 17, 2026, Petitioner contemporaneously filed a Memorandum of Law in Support of Petition for Writ of Habeas Corpus and Emergency Motion for Temporary Restraining Order ("Memorandum"), (Doc. 3), and Declaration, (Doc. 4).

Petitioner's Memorandum mirrors his substantive arguments in the Petition, but expands on his legal arguments with caselaw. The Declaration reiterates the facts Petitioner alleges in the Petition, (Doc. 1), and Memorandum, (Doc. 3). *Compare* (Doc. 4) *with* (Docs. 1, 3).. The Court will thus liberally construe the Memorandum and Declaration as part of Petitioner's Petition and will cite to the Petition, (Doc. 1), when addressing Petitioner's arguments unless otherwise

and Todd Lyons (collectively, the "Federal Respondents") responded to the Petition. (Doc. 10). Although the Warden of the Otero County Processing Center (the "Warden"), has not separately responded, Federal Respondents assert that their arguments apply equally to the Warden. *Id.* at 1 n.1. The Court will thus refer to the Warden and Federal Respondents collectively as "Respondents" herein. On March 24, 2026, Petitioner filed a reply.[4] Petitioner subsequently filed a letter, (Doc. 13), a Motion to Enter Evidence, (Doc. 14), and an Emergency Motion for Immediate Release from Immigration Detention, (Doc. 15), which the Court will address herein.

United States District Judge James O. Browning referred this case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 11). Having considered the parties' submissions and the relevant law, I recommend the Court **GRANT IN PART** the Petition and order an immediate bond hearing.

## I.    BACKGROUND

The following facts appear to be uncontested by the parties in relevant part except as otherwise reflected or stated below.

Petitioner, a native citizen of Sudan, entered the United States on or about December 25,

---

noted within these Proposed Findings and Recommended Disposition ("PFRD").

[4] Petitioner comments that his reply is late because he did not receive a copy of Federal Respondents' response, (Doc. 10), until March 16, 2026, "due to delays in institutional mail processing at the detention facility." (Doc. 12 at 5). Hence, Petitioner was not able to file a reply within the Court's seven (7) day deadline. (*Id.*); *see also* Rule 5 of the Rules Governing § 2254 Cases (stating a petitioner may submit a reply within a time that the judge fixes). Petitioner was served via first-class mail on March 11, 2026. *See* (Doc. 10 at 8) (certificate of service in compliance with Fed. R. Civ. P. 5(b)(2)(C)). Pursuant to Rule 6(d), three (3) days were added to Petitioner's reply deadline, thus, rending his reply due March 23, 2026. *See* Fed. R. Civ. P. 6(d) (mailbox rule of three (3) days applies to service under Rule 5(b)(2)(C)). Petitioner's reply, however, is mail stamped March 24, 2026. *See* (Doc. 12 at 6); *cf. Price v. Philpot*, 420 F.3d 1158, 1165-66 (10th Cir. 2005) (describing the mailbox rule). Accordingly, Petitioner's reply is deemed filed March 24, 2026, one day after it was due. Notwithstanding, Federal Respondents do not contest the timeliness of Petitioner's reply. Thus, in the interest of justice, the Court recommends considering the reply to the extent it is directed at Federal Respondents' response, (Doc. 10).

2008, as a minor asylee.[5] (Doc. 10-1 at 1). Petitioner's criminal history, as detailed in his Record of Deportable/Inadmissible Alien Form I-213, evidences the following convictions and sentencings:

- November 21, 2014, sentenced to 40 days for "Possession of Marijuana;"

- September 29, 2015, sentenced to 60 days to be served concurrently for "Conversion and Criminal Mischief;"

- January 15, 2016, sentenced to 60 days for "Possession of Marijuana;"

- June 21, 2016, sentenced to 365 days for "Theft;"

- March 20, 2018, sentenced to 365 days for "Resisting Law Enforcement" and sentenced to 30 days suspended for "Possession of Paraphernalia;"

- October 31, 2018, sentenced to 365 days for "Carrying a Handgun without a License;"

- March 21, 2022, sentenced to two (2) years and 183 days for "Possession of a Narcotic Drug" and sentenced to 365 days for "Resisting Law Enforcement;"

- September 22, 2022, sentenced to 365 days suspended for "False Informing;"

- April 27, 2023, sentenced to one (1) year and 183 days for "Theft" (prior conviction considered in sentencing);

- August 16, 2023, sentenced to 180 days for "Unauthorized Entry of Motor Vehicle" and sentenced to 60 days for "Operating Never Received a License;" and

---

[5] Petitioner's Record of Deportable/Inadmissible Alien Form I-213 states Petitioner was admitted as an asylee on December 25, 2018, in New York City, New York. (Doc. 10-2 at 3). That same document, in an earlier section, and the parties' briefs, however, concur Petitioner was actually admitted a decade earlier, on December 25, 2008. *See* (Doc. 10-2 at 1); (Doc. 1 at 1 (Petition)); (Doc. 4 at 1 (Petitioner's Decl.)); (Doc. 10 at 1 (Response)); (Doc. 10-1 at 1 (Notice to Appear)). The Court thus uses December 25, 2008, as the date Petitioner was admitted as an asylee to the United States.

- December 5, 2024, sentenced to three (3) years for "Unlawful Carrying of a Handgun-prior conviction."

(Doc. 10-2 at 2-4).[6] The following year, on August 19, 2022, Petitioner's probation was revoked. (Doc. 10-2 at 4).[7]

On June 7, 2025, U.S. Immigration and Customs Enforcement ("ICE") issued a Form I-200 administrative warrant for Petitioner's arrest based on probable cause that his aggravated felony conviction for theft as well as his drug and firearm convictions rendered him removable pursuant to the Immigration and Nationality Act ("INA"). (Doc. 10-3); *see also* (Doc. 10-2 at 2); 8 C.F.R. § 236.1(b); *Tophuria v. Warden, Otero Cnty. Processing Ctr.*, No. CV 26-374 JB/GJF, 2026 US Dist. LEXIS 72.599, 2026 WL 905826, at *10 (D.N.M. Apr. 2, 2026) ("The regulations implementing § 1226 confirm that the Form 1-200 is used for arrests pursuant to an immigration officer's authority under § 1226."). That same day, ICE lodged a detainer with the Marion County Sheriff Department and took Petitioner into custody.[8] (Doc. 10-2 at 3). Contemporaneously, Petitioner was served with a Notice to Appear (Form I-862). (Doc. 10-1). The Notice to Appear identified five (5) convictions from 2016 to 2024, that the Department of Homeland Security ("DHS") alleged rendered Petitioner "subject to removal from the United States pursuant to

---

[6] Respondents allege Petitioner filed Form N-600 Application for Certificate of Citizenship that was denied on April 11, 2019. *See* (Doc. 10 at 2); (Doc. 10-2 at 3). Petitioner contends that he "never filed" an Application for Certificate of Citizen. (Doc. 12 at 3). This disputed fact has no bearing on the Court's analysis as to whether Petitioner's detainment is lawful.

[7] Petitioner does not dispute the criminal record submitted by Respondents. *See* (Doc. 12 at 3).

[8] Petitioner was purportedly in Marion County Sheriff Department's custody "after a Failure to Appear Theft charge was dismissed." (Doc. 10-2 at 3).

violations of Sections 237(a)(2)(A)(iii),[9] 237(a)(2)(B)(i),[10] and 237(a)(2)(C)[11] of the INA. (Doc. 10-1 at 1, 4). Petitioner was ordered to appear before an Immigration Judge ("IJ") on June 23, 2025, in Indianapolis, Indiana. (Doc. 10-1 at 1).

Petitioner contends that during his immigration proceedings the IJ "advised [him] to open a new asylum case." (Doc. 1 at 2); (Doc. 3 at 2). Petitioner claims he "became aware of his prior asylum status only after receiving paperwork from his personal property . . . ." (*Id.*) Petitioner subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (Doc. 1 at 2); (Doc. 10-4 at 1). On August 15, 2025, the IJ denied Petitioner's applications for relief and issued an oral decision finding Petitioner removable and inadmissible under the INA "as set forth in the Notice To Appear." (Doc. 10-4 at 1). Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). (Doc. 10-4 at 4); *see also* (Doc. 10-5 at 2). As of the date of this PFRD, Petitioner did not submit an appellate brief and the briefing schedule has expired. *See https://acis.eoir.justice.gov/en/caseInformation* (last visited June 11, 2026). Petitioner's appeal is still pending before the BIA. *See id.*

On or about January 2, 2026, Petitioner was transferred to the Otero County Processing Center in Chaparral, New Mexico, where Petitioner is currently detained. (Doc. 1 at 2); *see also https://locator.ice.gov/odls/#/results* (last visited June 11, 2026).

---

[9] Section 237(a)(2)(A)(iii) states, "any [noncitizen] who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

[10] Section 237(a)(2)(B)(i) provides, in relevant part, "[a]ny [noncitizen] who at any time after admission has been convicted of a violation of . . . any law or regulation of a State [or] the United States . . . relating to a controlled substance . . . is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

[11] Section 237(a)(2)(C) states, in relevant part, "[a]ny [noncitizen] who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm . . . in violation of any law is deportable." 8 U.S.C. § 1227(a)(2)(C).

## II.      LEGAL STANDARD

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A habeas petition under 28 U.S.C. § 2241 "challenges 'the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement.'" *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that [she] is entitled to relief." *Sa'Ra v. Raemisch*, 536 F. App'x 783, 788 (10th Cir. 2013) (quoting *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964)). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## III.     DISCUSSION[12]

Petitioner argues that his prolonged immigration detention—now exceeding 12 months—

---

[12] The Court notes that Petitioner does not challenge that he is a deportable noncitizen as defined in § 1227. The record shows that the IJ determined Petitioner was a deportable noncitizen as defined in 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i), 1227(a)(2)(C) because of his multiple convictions of qualifying crimes. (Doc. 10-4 at 1). Petitioner also received a copy of the administrative warrant and the Notice to Appear, which noted the statutory authority that provides for the removal of a noncitizen who is "in and admitted to the United States" if the noncitizen commits certain criminal offenses. (Doc. 10-1); (Doc. 10-3). The Court thus finds any arguments pertaining to the applicability of § 1227 deemed waived. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").

violates his substantive and procedural due process rights under the Fifth Amendment. (Doc. 1 at 2); *see also* (Doc. 3 at 2). He further contends that his removal is not reasonably foreseeable because he has appealed the IJ's removal order and denial of his asylum application. (Doc. 1 at 2); *see also* (Doc. 3 at 2). He argues that under these circumstances, his detention has become excessive and is not reasonably connected to any legitimate purpose. (Doc. 1 at 2); *see also* (Doc. 3 at 2). He further argues that he is not a flight risk or a danger to the community. (Doc. 1 at 2); *see also* (Doc. 3 at 2). He seeks immediate release or, in the alternative, an individualized bond hearing before an immigration judge. (Doc. 1 at 3). Respondents argue that this Court lacks subject matter jurisdiction and, alternatively, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) because he committed a theft offense identified in 8 U.S.C. § 1226(c)(1)(E)(ii). (Doc. 10 at 5).

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. The existing record is sufficient to resolve the habeas petition, and it also provides an adequate basis to address the TRO to the extent necessary.

A.      **The Court has Subject Matter Jurisdiction under 8 U.S.C. § 2241**

District courts are authorized to entertain petitions for a writ of habeas corpus challenging the lawfulness of detention under the federal immigration laws and the U.S. Constitution. 8 U.S.C. § 2241; *Rasul v. Bush*, 542 U.S. 466, 483 (2004).

Respondents assert that the Court's jurisdiction over Petitioner's habeas claims is foreclosed by § 1226(e). (Doc. 10 at 5-6). Section 1226(e) bars review of the Attorney General's discretionary judgment regarding the application of § 1226. 8 U.S.C. § 1226(e). However, in Respondents' own terms, the application of § 1226(c) is not discretionary; it is mandatory. (Doc. 10 at 3-4); *see Olmos v. Holder*, 780 F.3d 1313, 1316 (10th Cir. 2015) (holding nothing in 8

U.S.C.S. § 1226(e) prevents courts from deciding whether the immigration officials had statutory authority to impose mandatory detention). Further, without clear congressional language dictating otherwise, under Supreme Court precedent, § 1226(e) cannot foreclose review of habeas claims. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *accord Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001). Section 1226 contains no language clearly foreclosing habeas challenges to an individual's detention under its framework. Therefore, § 1226(e) does not preclude judicial review of Petitioner's habeas claims regarding mandatory detention under § 1226(c).

Further, Respondents intimate that this Court may soon lack jurisdiction because a final removal order is forthcoming due to Petitioner's failure to submit an appellate brief. (Doc. 10 at 7). Respondents are correct that a final removal order could present a conceivable obstacle to the Court's jurisdiction over the Petition.[13] A district court's purview does not extend to legal and factual questions "arising from any action taken or proceeding brought to remove a [noncitizen][14] from the United States." 8 U.S.C. § 1252(b)(9); *see also id.* § 1252(a)(5) (stating that a petition for review filed in a court of appeals shall be the "sole and exclusive means for judicial review of an order of removal"). However, the existence of a final removal order does not alone strip a district court of jurisdiction over a habeas petition challenging the lawfulness of detention. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Mukantagara v. DHS*, 67 F.4th 1113, 1116 (10th Cir. 2023) (emphasizing that § 1252(b)(9) has a "'narrow' scope" (*quoting DHS v. Regents of the Univ. of Cal.*, __ U.S. __ , 591 U.S. 1, 140 S. Ct. 1891, 1907, 207 L. Ed. 2d 353 (2020)) and that "[a] claim only arises from a removal proceeding when the parties in fact are challenging removal

---

[13] Although the effect of a removal order on this Court's habeas jurisdiction has not been briefed by the parties, the Court has an independent duty to assess its subject matter jurisdiction over § 2241 petitions. *Palma-Salazar v. Davis*, 677 F.3d 1031, 1038 n.3 (10th Cir. 2012).

[14] This PFRD "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2, 140 S. Ct. 1683, 207 L. Ed. 2d 111 (2020) (citing 8 U.S.C. § 1101(a)(3)).

proceedings" (citing *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257 (11th Cir. 2020))). The Petition raises constitutional and statutory questions as to Petitioner's detention, rather than the validity of the removal order. Hence, the Court would retain jurisdiction over the Petition even if a final removal order is issued.

**B.     Respondents Did Not Address Petitioner's Due Process Asylum Status Termination Claim**

As an initial matter, the Court notes that Petitioner raises due process claims pertaining to his asylee status as a minor. Petitioner alleges that he was unaware of his former asylee status until he received "paperwork from [his] personal property following the [IJ's] instruction to open a new asylum case." (Doc. 4 at 1). He claims the IJ's failure "to recognize Petitioner's prior lawful status raise serious due process concerns." (Doc. 1 at 2). Moreover, he claims he "did not knowingly waive, abandon, or relinquish that status." (Doc. 3 at 2). He concludes that the immigration proceedings were fundamentally unfair because he "lacked notice" as to his asylum status. (*Id.*) Respondents did not respond to Petitioner's asylum due process claims in their response brief. *See* (Doc. 10). "Failure to respond to an argument is generally deemed an acquiescence." *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 622 n.5 (D.N.M. 2007); see also D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion . . . constitutes consent to grant the motion."). Accordingly, the Court considers the complete failure to address this issue an "acquiescence," and is the first basis for granting the Petition in part.[15]

---

[15] Asylum is a discretionary relief and may be barred if the asylee is convicted of an aggravated felony or other particularly serious crime. 8 U.S.C. §§ 1158(c)(2)(B), (b)(2)(A)(ii) ("Asylum granted under subsection (b) does not convey a right to remain permanently in the United States, and may be terminated if the Attorney General determines that . . . the [noncitizen] . . . having been convicted by a final judgment of a **particularly serious crime**, constitutes a danger to the community of the United states . . . .") (emphasis added). A noncitizen "who has been convicted of an aggravated felony shall be considered to have been convicted of a **particularly serious crime**." *Id.* at (b)(2)(B)(i) (emphasis added).

### C.    Petitioner is Properly Detained under § 1226(c)

Petitioner argues that Respondents violated his Fifth Amendment Due Process rights by detaining him without a § 1226(a) bond hearing. (Doc. 1 at 2);(Doc. 3 at 2). Respondents counter Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), as amended and expanded by the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), which allows the Attorney General to detain then remove any noncitizen who has committed certain qualifying crimes. (Doc. 10 at 5). Petitioner does not dispute that he was convicted of a qualifying crime (aggravated felony; controlled substance; and possession of a firearm). He rebuts that he is being detained pursuant to 8 U.S.C. § 1231 because he is subject to a final removal order. (Doc. 12 at 3). And, assuming § 1226(c) applied, his mandatory detention "without individualized review raises serious constitutional concerns." (*Id.*)

Detention of non-citizens within the United States is generally governed by 8 U.S.C. § 1226 and 8 U.S.C. § 1231. The Attorney General may arrest and detain a non-citizen pending adjudication of their removal proceedings under § 1226. Detention is mandatory for certain non-citizens, including those who are "deportable by reason of having committed any offense" listed in another immigration statute. 8 U.S.C. § 1226(c)(1)(B); 8 U.S.C. § 1227(a)(2). *See also Demore*, 538 U.S. at 528 (concluding mandatory detention under § 1226 is constitutional).

The Court finds Petitioner is a deportable noncitizen subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B). That provision states: "The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]" 8 U.S.C. § 1226(c)(1)(B). Here, the IJ found that Petitioner is removable for having committed: (1) an aggravated felony of theft covered in §1227(a)(2)(A)(iii); (2) a firearm offense covered in § 1227(a)(2)(C); and (3) a controlled

substance offense covered in § 1227(a)(2)(B)(i). (Doc. 10-4 at 1). As such, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B). *See Duran v. Chestnut*, Case No. 1:26-cv-02020-JLT-CDB, 2026 U.S. Dist. LEXIS 109378, 2026 WL 1383366, at *8 (E.D. Cal. May 18, 2026) (finding petitioner was a deportable alien subject to mandatory detention under § 1226(c) because he committed a firearm offense covered by § 1227(a)(2)(C)). Respondents also argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(i)-(ii), which mandates detention of any noncitizen who is: (i) inadmissible under paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a), and (ii) is "charged with, ***arrested*** for, ***convicted*** of . . . committing acts which constitute the essential elements of" certain listed theft-related offenses. 8 U.S.C. § 1226(c)(1)(E)(i)-(ii) (emphasis added). Petitioner does not challenge the application of either element—inadmissibility or conviction of theft-related offenses.

The Court further finds that Petitioner is not subject to a final removal order and, hence, Section 1231 does not apply. As explained by Chief Judge Gonzales,

> Under the Immigration and Nationality Act ("INA"), when a noncitizen is ordered removed, the Government must execute the removal within a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." § 1231(a)(2). As relevant here, the "removal period begins" when the removal order "becomes administratively final." § 1231(a)(1)(B).
>
> Although the Government may continue to detain an "inadmissible" noncitizen beyond the 90-day removal period, *see* § 1231(a)(6), it may not detain them "indefinitely." *Zadvydas*, 533 U.S. at 699. A six-month detention is "presumptively reasonable." *Id.* at 680. This period runs only while the noncitizen is actually "detained." *Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y. 2017); *see also Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala.) ("*Zadvydas* time" cannot run "while a petitioner is not in custody"); *Chun Yat Ma v. Asher*, 2012 WL 1432229, at *3 (W.D. Wash.) (same). After six months, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to rebut that showing. *Zadvydas*, 533 U.S. at 680.

*Jiang v. Bondi*, No. CIV 25-0922 KG/GBW, 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025).

11

Here, *Zadvydas* does not currently apply to Petitioner's detention because he does not have a final removal order. It is undisputed that Petitioner appealed his removal order and asylum application to the BIA and that appeal is currently pending. *See, e.g.*, (Doc. 1 at 2); (Doc. 3 at 2); (Doc. 10 at 7). Because this appeal is pending, Petitioner's removal order has not become administratively final and the removal period under *Zadvydas* has not started to run. *See* 8 C.F.R. § 1241.1 ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals."). Hence, the Court finds Petitioner's arguments disputing the applicability of a final removal order in this case meritless.

For these reasons, the Court recommends finding Petitioner is properly detained pursuant to § 1226(c).

**D.    The Due Process Clause Applies to Petitioner and Requires He be Provided an Opportunity for Release on Bond**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause's protections extend to all persons within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (emphasis added). The Tenth Circuit has recognized that inadmissible aliens in physical custody in the United States enjoy some procedural and substantive due process protections under the Fifth Amendment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981).

At present, there is no binding authority that squarely addresses whether Petitioner's mandatory detention under § 1226(c) without a bond hearing violates the Fifth Amendment. In

*Zadvydas*, the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6—month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, 538 U.S. 510, 529 (2003), the Supreme Court rejected a due process challenge to § 1226(c) and distinguished *Zadvydas* because, unlike indefinite detention pending removal under § 1231(a)(6), mandatory detention under § 1226(c) has a "definite termination point," *i.e.*, the conclusion of removal proceedings. The Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531.

In *Jennings v. Rodriguez*, the Supreme Court rejected the Court of Appeals' construction of § 1226(c) "as imposing an implicit 6-month time limit on an alien's detention" and remanded the case. 583 U.S. 281, 292 (2018). As the Court of Appeals noted on remand, however, the Supreme court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). "Since the *Rodriguez* remand, there has been a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Lopez v. Garland*, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022) (internal quotation marks and citation omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under § 1226(c) becomes unconstitutional,

courts in this Circuit have used the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether due process requires a bond hearing. *See, e.g.*, *Hernandez-Parrilla v. de Anda-Ybarra*, 2025 U.S. Dist. LEXIS 258579, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Barreno v. Baltasar*, 2025 U.S. Dist. LEXIS 226973, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025); *Garcia Cortes v. Noem*, 2025 U.S. Dist. LEXIS 181582, 2025 WL 2652880, at *4 (D. Colo. Sept. 16, 2025). In determining the process due an individual, *Mathews* requires the Court to balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. 424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living freely outside of immigration custody. Although Petitioner has been in and out of the correctional system over the span of a decade, he has been in the United States since December 2008. For six (6) years prior to his first conviction—and when not incarcerated—he developed significant ties to the community. *See* (Doc. 4 at 2). His private interest in freedom from detention is therefore substantial.

The second *Mathews* factor is a closer call. The risk of erroneous deprivation is considerable in this case where Petitioner claims his asylum status was terminated without notice and he has significant family and community ties in the United States. For instance, his father is a naturalized citizen. *See* (Doc. 13 at 1). On the other hand, as Respondents point out, Petitioner is properly subject to mandatory detention under the statute. *See* (Doc. 10 at 5). In considering the probable value of additional or different procedural safeguards, the equities tip in favor of a bond

hearing, rather than release, where Petitioner bears the burden of showing why release on bond is warranted in this case. This helps ensure Petitioner is not erroneously deprived of his liberty interest in release while recognizing that detention is mandated by the statute.

Finally, the third *Mathews* factor favors Petitioner as well. While the United States Government certainly has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent a rational reason for doing so is low. The justification for mandatory indefinite detention of a noncitizen carries little weight in this case, where Petitioner's indefinite, ongoing detention of over twelve months, with no reasonably foreseeable end in sight, is constitutionally excessive in relation to the United States Government's legitimate, nonpunitive purpose of facilitating removal. First, there is reason to believe that the BIA may not review Petitioner's case in the reasonably foreseeable future given the volume of appeals currently before the BIA.

> As the Department of Justice recently stated, after the Attorney General reduced the BIA's size by nearly one half in early 2025, there has been an "unprecedented B[IA] caseload." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). Indeed, "between fiscal year 2015 and the end of fiscal year 2025, the B[IA]'s pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals," leaving the BIA "at a point where, even were it to have additional resources and better management, . . . it would not be able to keep up with incoming filings while tackling the backlog in any meaningful way." *Id.* (citing Executive Office of Immigration Review ("EOIR"), Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025), https://www.justice.gov/eoir/media/1344986/dl?inline[https://perma.cc/88C5-MU4N]). Thus, "the B[IA] largely functions now as simply a vessel for further delay of the eventual resolution of [a noncitizen's] case." *Id.* at 5271.

*Serrano v. Scott*, ___F. Supp. 3d___, 2026 U.S. Dist. LEXIS 115824, 2026 WL 1469639, at *3 (W.D. Wash. 2026). Second, Petitioner's appeal to the BIA could result in a reversal or an appeal to the Tenth Circuit Court of Appeals—proceedings that could take years. Moreover, Respondents' contention that Petitioner's appeal will be dismissed quickly because he did not submit an appellate

15

brief is purely conjecture. Requiring a bond hearing does not impose a significant fiscal or administrative burden on the Government, nor does it undermine the Government's "sovereign prerogative . . . to decide which [noncitizens] to admit[,]" *Landon*, 459 U.S. at 32, as Petitioner's removal proceedings—and the Government's discretion over them—will continue regardless of his detention status.

On balance, the Court finds that under the three *Mathews* factors, the Due Process Clause entitles Petitioner to an opportunity to seek release on bond at a custody redetermination hearing. However, given that the statutory scheme applicable to Petitioner contemplates mandatory detention, the Court recommends Petitioner bear the burden of demonstrating that he is not a flight risk or a danger to his community.

For these reasons, I recommend finding that § 1226(c) governs Petitioner's mandatory detention. However, I recommend finding that Petitioner's prolonged detention violates his substantive due process rights under the Fifth Amendment. In the Petition, Petitioner argues that he is entitled to immediate release or, in the alternative, an individualized bond hearing before an IJ. (Doc. 1 at 3). I thus recommend that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral IJ within twenty-one (21) days of the Court's order. If Petitioner is not afforded a bond hearing within that time, I recommend that the Court order his immediate release.

### E.    Disposition of Petitioner's TRO

On February 17, 2026, Petitioner contemporaneously filed an Emergency Motion for Temporary Restraining Order ("Motion for TRO"), (Doc. 2). In the Motion for TRO, Petitioner seeks an order prohibiting his removal during these proceedings. (Doc. 2 at 1). On March 6, 2026, this Court entered an Order enjoining Respondents from transferring Petitioner from the District

16

of New Mexico to maintain the Court's jurisdiction over this matter. See (Doc. 8). Hence, the Court recommends that Petitioner's Motion for TRO, (Doc. 2), be **DENIED** as **MOOT**.

### F.  Disposition of Petitioner's Evidence Motion

Also before the Court is Petitioner's Motion to Enter Evidence ("Evidence Motion"), (Doc. 14), filed May 7, 2026, seeking to admit evidence allegedly demonstrating the current political climate in Sudan. *See* (Doc. 14). Respondents did not file a response. The Evidence Motion is comprised of three (3) news articles labelled collectively as "Exhibit A." Petitioner did not seek leave to file supplemental evidence. The proffered evidence is irrelevant to the issue before the Court as to whether Petitioner is properly detained under § 1226(c) and if he is entitled to a bond hearing. For this reason, the Court finds that Exhibit A does not affect the Court's reasoning above regarding the constitutionality of Petitioner's continued detention pending removal from this country. The Court therefore recommends that Petitioner's Evidence Motion be **DENIED**.

### G.  Disposition of Petitioner's Emergency Motion for Immediate Release from Immigration Detention

On June 17, 2026, Petitioner filed an Emergency Motion for Immediate Release from Immigration Detention, (Doc. 15). In the Emergency Motion, Petitioner seeks his immediate release pending the adjudication of his habeas petition. (Doc. 15 at 1). Because the relief he seeks in the Emergency Motion is duplicative of the relief he seeks in the Petition, granting the Petition in part will **MOOT** the Emergency Motion.

## IV.  RECOMMENDATION

For the reasons stated above, the Court respectfully **RECOMMENDS** as follows:

1.  Petitioner Mohamed Adam Tairab's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Doc. 1), should be **GRANTED IN PART**;

2.    Respondents shall provide Petitioner a bond hearing within twenty-one (21) days of the Court's order;

3.    If Petitioner is not afforded the bond hearing within that time, he shall be immediately released;

4.    Respondents shall file a status report regarding Petitioner's bond hearing or release twenty-eight (28) days after the Court's order;

5.    Petitioner's Motion for Temporary Restraining Order, (Doc. 2), should be **DENIED AS MOOT i**n light of the relief recommended on the habeas petition;

6.    Petitioner's Motion to Enter Evidence, (Doc. 14), should be **DENIED**; and

7.    Petitioner's Emergency Motion for Immediate Release from Immigration Detention, (Doc. 15), should be **DENIED** AS **MOOT i**n light of the relief recommended on the habeas petition.

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE